**Exhibit A**

# Exhibit A

# Commonwealth of Massachusetts

BARNSTABLE, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2372CV00295

Albert J. Schulz, Personal Representative
of the Will of Eleanor W. Lambert
_____ , PLAINTIFF(S),

v.

Northeastern
University
_____ , DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO ___NORTHEASTERN UNIVERSITY___ . (Defendant's name)

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Barnstable Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.**  To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, _Superior_ Court,  by mail to P.O. Box 425, or in person to 3195 Main Street, Barnstable, MA  02630, _AND_

    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _Schulz Law Offices, LLC, 1340 Main_ Street, Osterville, MA 02655-1542

3.  **What to include in your response.**. An **"Answer"** is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

NORTHE...   UNIVERSITY

AUG 1 8 2023

OFFICE OF THE
GENERAL COUNSEL

8-18-23

4.   **Legal Assistance**. You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings**: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Heidi E. Brieger

Witness Hon. Judith Fabricant, Chief Justice on August 7, , 2023 . (SEAL)

Scott W. Nickerson
Clerk-Magistrate

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___          Signature: _____

**N.B.    TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2372CV00295 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

PLAINTIFF(S): Albert J. Schulz, Personal Representative of the
Will of Eleanor W. Lambert
ADDRESS: 1340 Main Street
Osterville, MA 02655

COUNTY

BARNSTABLE

DEFENDANT(S): Northeastern University

ATTORNEY: Michael F. Schulz
ADDRESS: 1340 Main Street
Osterville, MA 02655-1542

ADDRESS: 716 Columbus Avenue
Boston, MA 02120

BBO: 662741

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A99 | Claim for Benefit under self-indured employer Retiree Major Medical Plan | (F) | [X] YES   [ ] NO |

*If "Other" please describe:
D13      Declaratory Judgment G.L. 231A    (A)

Is there a claim under G.L. c. 93A?
[ ] YES   [X] NO

Is this a class action under Mass. R. Civ. P. 23?
[ ] YES   [X] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................... $
2. Total doctor expenses ................................................................. $
3. Total chiropractic expenses ......................................................... $
4. Total physical therapy expenses .................................................. $
5. Total other expenses (describe below) ......................................... $
                                                          Subtotal (A): $
B. Documented lost wages and compensation to date ...................... $
C. Documented property damages to date ...................................... $
D. Reasonably anticipated future medical and hospital expenses ...... $
E. Reasonably anticipated lost wages ............................................ $
F. Other documented items of damages (describe below) ................. $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                          TOTAL (A-F):$

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

See attached sheet

                                                          TOTAL: $168,469.64

Signature of Attorney/ Unrepresented Plaintiff: X  *Michael F. Schulz*          Date: 8/7/2023

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

NONE

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X  *Michael F. Schulz*          Date: 8/7/2023

CIVIL ACTION COVER SHEET

Plaintiff: Albert J. Schulz, Personal Representative of the Will of Eleanor W. Lambert

Defendant: Northeastern University

**Additional Sheet to Statement of Damages Pursuant to c. 212, § 3A**

<u>CONTRACT CLAIMS</u>

Eleanor W. Lambert ("Lambert"), who retired in 1989 from Northeastern University as Assistant Director of Admissions, was a covered individual under Northeastern University's Retiree Major Medical Plan for employees who retired prior to December 31, 1991 (the "Plan"). The Plan, among other things, provided coverage for home health care services where hospitalization or confinement in an extended care facility would otherwise have been required. In 2021, Elder Services of Cape Cod determined that Lambert was unable to continue to live alone. From October, 2021, until her death at age 95 on August 19, 2022, Visiting Angels of Cape Cod and Traditions Hope Health Services provided in-home health services to Lambert 24 hours a day, seven days a week, which amounted to a total of $168,469.64. All services were paid by Lambert or Schulz, as agent under a Lambert's durable power of attorney. Plaintiff filed all the necessary claim forms with Northeastern's purported representative, EBPA LLC, by January, 2023, as required under the Plan. Neither Northeastern nor EBPA denied the claim or requested additional information within 30 days from the date the claim was filed as required by the Plan. Despite numerous communications over the past six months, Northeastern has failed to pay any benefits under the Plan .

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2372CV00295 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Albert J. Schulz, Personal Representative of the Will of Eleanor W. Lambert vs. Northeastern University | Scott W. Nickerson, Clerk of Court Barnstable County |
|---|---|
| TO: Michael F Schulz, Esq. Schulz Law Offices, LLC 1340 Main St Osterville, MA 02655 | COURT NAME & ADDRESS Barnstable County Superior Court 3195 Main Street Barnstable, MA 02630 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/06/2023 | |
| Response to the complaint filed (also see MRCP 12) | | 12/05/2023 | |
| All motions under MRCP 12, 19, and 20 | 12/05/2023 | 01/04/2024 | 02/05/2024 |
| All motions under MRCP 15 | 12/05/2023 | 01/04/2024 | 02/05/2024 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/03/2024 | | |
| All motions under MRCP 56 | 07/02/2024 | 08/01/2024 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/29/2024 |
| Case shall be resolved and judgment shall issue by | | | 08/06/2025 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 08/07/2023 | ASSISTANT CLERK Scott W Nickerson | PHONE (508)375-6684 |
|---|---|---|

Date/Time Printed: 08-07-2023 14:37:47

SCV026l. 08/2018

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

BARNSTABLE DIVISION

Barnstable, ss.

Case No.    2372CV00295

| | |
|---|---|
| ALBERT J. SCHULZ, PERSONAL REPRESENTATIVE ) <br> OF THE WILL OF ELEANOR W. LAMBERT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NORTHEASTERN UNIVERSITY, ) <br> ) <br> Defendant. ) | SUPERIOR COURT <br> BARNSTABLE, SS <br><br> AUG 0 7 2023 <br><br> FILED <br> *Scott W. Nickerson, Clerk* |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

In this action for breach of contract and declaratory judgment, Plaintiff, as Personal Representative of the Will of Eleanor W. Lambert, late of Barnstable (Osterville), seeks relief from Defendant Northeastern's failure to provide reimbursement for 24/7 home health care services in the amount of $168,469.64 provided to long-time Assistant Director of Admissions from October, 2021, until her death at age 95 on August 29, 2022, pursuant to Northeastern University's Retiree Major Medical Plan, despite Northeastern's acknowledgement of liability for the reimbursement and numerous communications from Plaintiff that were ignored.

1

## Jurisdiction and Venue

Jurisdiction is proper in the Superior Court Department pursuant to G.L, c. 212, § 3, c. 214, § 1, and c. 231A, § 1. Venue is proper in Barnstable County because Plaintiff resides and has a place of business in Barnstable County.

## Parties

1.      Plaintiff, Albert J. Schulz (hereinafter "Schulz") is an individual having a principal place of business at The Samuel Isham House, 1340 Main Street, Osterville, Massachusetts. Schulz is the duly appointed personal representative of the Will of Eleanor W. Lambert, Barnstable County Probate and Family Court, Docket No. BA22P1470EA. Schulz is a partner/member in the firm of Schulz Law Offices, LLC at the above address.

2.      Defendant, Northeastern University (hereinafter "Northeastern") is a private institution of higher education having a principal place of business at 716 Columbus Avenue, Boston, Massachusetts 02120.

## Facts

3.      Eleanor Watts Lambert ("Eleanor") was born February 25, 1927 in Lawrence, Massachusetts. She married Frank Lambert, Jr. ("Frank" ), an alumnus of Northeastern in 1948.

4.      Eleanor obtained a bachelor's degree in Business Administration from Northeastern in 1949, and an MBA in 1951.

5.      Eleanor began her professional career at Northeastern in 1956 after working as an assistant auditor for Newton Wellesley Bank and Trust Company.

6.      During her employment at Northeastern, Eleanor initially counseled potential undergraduate Northeastern students in her office, and subsequently became Northeastern' s

2

primary roving ambassador, visiting high schools and attending college fairs throughout New England, New York and Pennsylvania as Assistant Director of Admissions.

7.     After thirty-three (33) years of faithful service to Northeastern, Eleanor retired in 1989.

8.     As a retiree from Northeastern prior to December 31, 1991, Eleanor was eligible for and became a participate in the Northeastern University Retiree Major Medical Plan. A copy of the Summary Plan Description is attached hereto as **Exhibit 1**. The Employer/Plan Sponsor is Northeastern University, Human Resources Management, 716 Columbus Avenue, Suite 250, Boston, Massachusetts 02120. See Exhibit 1, at page 18.

9.     Eleanor and Frank were each an Insured Individual under the Plan. See Exhibit 1, at page 15 (Definitions).

10.     Coverage under the Plan was designed to provide an added layer of protection not covered by other medical insurance programs.

11.     The total amount of coverage available under the Plan is limited to a lifetime maximum benefit of $100,000.00 per Covered Individual. See Exhibit 1, at page 6, paragraph D.

12.     Among the covered charges provided under the Plan was for home health-care services where hospitalization or confinement in an Extended Care Facility would otherwise have been required. See Exhibit 1, at page 7, paragraph 7.

13.     Frank, as a Covered Individual, received benefits under the Plan prior to his death on September 5, 2010. Benefits under the Plan were paid to Eleanor, but only after Northeastern ignored Eleanor's numerous requests for reimbursement, which forced her to retain counsel to secure reimbursement under the Plan through Northeastern' s representative, EBPA LLC ("EBPA"), a purported Delaware limited liability company, registered to do business in the

3

Commonwealth of Massachusetts, and having a principal place of business at 37 Industrial Drive, Suite E, Exeter, New Hampshire 03833.[1]

14.     After Frank's death, Eleanor lived alone at her home at 150 Bay Street in Osterville. Eleanor and Frank had no children or close relatives.

15.     On or about October, 2021, Elder Services of Cape Cod determined that Eleanor, then age ninety-four (94), could no longer live independently at her home. Eleanor was given two choices, enter a nursing home or obtain twenty-four care, seven days a week ("24/7").

16.     Beginning on October 19, 2021 and continuing until April 26, 2022, except for brief periods when Eleanor was an in-patient at Cape Cod Hospital, Visiting Angels of Cape Cod ("Visiting Angels") provided 24/7 in-home care services to Eleanor, amounting to $110,767.64 as set forth on the invoices set forth on **Exhibit 2** attached hereto. Plaintiff provided invoices describing the services rendered by Visiting Angels to EBPA.

17.     All services provided to Eleanor by Visiting Angels were paid by Eleanor or Plaintiff, as agent under a durable power of attorney, to Visiting Angels, directly.

18.     In the spring of 2022, Visiting Angels was unable to provide sufficient care-givers on a consistent basis.

19.     Beginning on April 26, 2022, and continuing until Eleanor's death on August 19, 2022, Eleanor's care was provided by Traditions Home Health Services, LLC ("Traditions"), amounting

---

[1] EBPA, LLC ("EBPA") was formed as a Delaware limited liability company on November 12, 2004. EBPA was registered as a foreign limited liability company in Massachusetts on February 8, 2008. EBPA was involuntarily dissolved in Massachusetts on April 19, 2011, reinstated on September 9, 2011, and involuntarily dissolved, a second time, on June 30, 2021. EBPA has not been revived in Massachusetts. A search of the State of Delaware website indicates EBPA has not been in good standing since 2005.

to $57,702.00, as set forth on the invoices set forth on **Exhibit 3**, attached hereto. Plaintiff provided invoices describing the services rendered by Traditions to EBPA.

20.     All services provided to Eleanor by Traditions were paid by Eleanor or Plaintiff, as agent under a durable power of attorney to Traditions, directly.

21.     Eleanor, through Plaintiff, obtained and delivered to EBPA the necessary denials of coverage by Medicare for all services provided by Visiting Angels and  Traditions.

22.     Neither Northeastern nor EBPA denied coverage under the Plan, nor otherwise communicated with Plaintiff that additional information was required under the Plan.

23.     The Plan requires that for *Post Service Claims* (claims that are filed for payment of benefits after health care is received) a written notice of denial must be provided by the Plan Administrator within thirty days of the receipt of the claim. See Exhibit 1, at page 11 (Benefit Determinations).

24.     All claims for services rendered by Visiting Angels and Traditions were submitted by Schulz to and received by EBPA by January, 2023, as required under the Plan.

25.     Plaintiff has written to EBPA on numerous occasions over the past nine months requesting payment of benefits under the Plan. Northeastern and EBA have ignored each written communication from of Plaintiff.

26.     Plaintiff has also spoken via telephone, with numerous EBPA employees over the past twenty months, including several with EBPA employee, Stacey Saravo ("Saravo"), at her direct dial number: (603) 373-5378. Saravo acknowledged receipt of the Visting Angels an Traditions invoices and Medicare denials. Saravo told Plaintiff that Plaintiff's application for benefits was in the process of being reviewed and that Plaintiff would be advised shortly. Plaintiff has never received a return telephone call or written reply to any communication with Saravo.

<u>COUNT I (Breach of Contract)</u>

27.     Plaintiff restates the allegations contained in paragraphs 1-26 as though fully set forth herein.

28.     Plaintiff has filed all necessary documentation to Northeastern's purported representative, EBPA, including copies of invoices for Eleanor's care, denials of coverage from Medicare, and has performed all of his obligations on behalf of Eleanor in order to be reimbursed for the care provided to Eleanor from October, 2021 through August 19, 2022.

29.     Neither Northeastern or EBPA has not denied coverage to Eleanor as a Covered Individual under the Northeastern University Retiree Major Medical Plan.

30.     Northeastern and its purported representative, EBPA have failed to respond to numerous oral and written communications from Plaintiff.

31.     Northeastern has breached its obligations under the Plan.

32.     Plaintiff is entitled to receive the sum of $100,000.00, the maximum coverage allowed under the Plan.

WHEREFORE, Plaintiff respectfully:

A.     Judgment against the defendant, Northeastern University, in an amount to be determined by the Court with interest from the commencement of this action;

B.     Costs incurred in this action;

C.     Upon finding, verdict or decision, and upon Plaintiff's motion, that the Court determine, after hearing that all or substantially all of the defenses or counterclaims were wholly insubstantial, frivolous and not advanced in good faith, award Plaintiff an amount representing his reasonable counsel fees and other costs and expenses incurred in prosecuting this action; and

D.     Such other and further relief as the court deems just and proper.

COUNT II (Declaratory Judgment)

33.    Plaintiff restates the allegations contained in paragraphs 1-32 as though fully set forth herein.

34.    An actual controversy within the jurisdiction of this Court exists with respect to the matters stated hereinabove between the Plaintiff and Defendant, namely, the coverage under the Plan and the amount of benefits payable by Defendant Northeastern under the Plan, hereinbefore described.

35.    Plaintiffs seek a declaratory judgment regarding the rights and obligations of the Plaintiff and Defendant.

**WHEREFORE**, Plaintiff request that this Court enter judgment:

A.        Declaring the rights and other legal relations of the Plaintiff and Defendant;

B.        Declaring that Plaintiff, as Personal Representative of the Will of Eleanor W. Lambert, is entitled to benefits under the Northeastern University Retiree Major Medical Plan for home health care services provided by Visiting Angels and Traditions.

C.        Upon finding, verdict or decision, and Plaintiff's subsequent motion, that the Court determine, after hearing that all or substantially all of the defenses or counterclaims were wholly insubstantial, frivolous and not advanced in good faith, award Plaintiff an amount representing his reasonable counsel fees and other costs and expenses incurred in prosecuting this action; and

D.        For such other and further relief as to this Court may deem meet and just.


**PLAINTIFF HEREBY CLAIMS A TRIAL BY JURY AS OF RIGHT ON ALL ISSUES SO TRIABLE**

Plaintiff,

ALBERT J. SCHULZ, PERSONAL
REPRESENTATIVE OF THE WILL OF
ELEANOR W. LAMBERT,
By his attorney,


Michael F. Schulz
[BBO# 662741]
Schulz Law Offices, LLC
The Samuel Isham House
1340 Main Street
Osterville, MA 02655-1542
(508) 428-0950
mschulz@schulzlawoffices.com

Date: August 7, 2023

8

EXHIBIT 1

# Northeastern University

# SUMMARY PLAN DESCRIPTION

## *for*

## *Retiree Major Medical Plan*

## *(This plan covers eligible Northeastern University Employees who retired prior to December 31, 1991)*

## TABLE OF CONTENTS

**Page**

Important Information ............................................................................................ 1

How to Use Your Summary Plan Description ......................................................... 2

Who is Eligible to Participate in the Plan ............................................................. 3

Effective Date of Coverage .................................................................................. 3

Termination of Insurance ..................................................................................... 4

Contributions ...................................................................................................... 5

Schedule of Benefits ........................................................................................... 5

Benefit Limitations .............................................................................................. 8

Coordination of Benefits (COB) ........................................................................... 8

Provision of Protected Health Information to Plan Sponsor .................................. 9

How To Submit A Claim ..................................................................................... 10

Claims Procedures ............................................................................................. 11

Definitions ......................................................................................................... 15

Your ERISA Rights and Other Important Information .......................................... 16

| Important Information |
| --- |

This Summary Plan Description provides important information about who is eligible, what medical expenses are covered, how to file a claim, as well as additional administrative details. We urge you to read this booklet, share it with your family, and become familiar with the Plan so you'll know how to proceed when you have a need for medical benefits.

Northeastern University reserves the right to discontinue or change the Northeastern University Retiree Major Medical Plan at any time. The Plan is not an employment contract or any type of employment guarantee.

The Plan described in this booklet is a benefit plan of Northeastern University. The benefits under this Plan are administered by EBPA and are paid from Northeastern University's funds.

## How to Use Your Summary Plan Description

Please read this Summary Plan Description (SPD) carefully to ensure understanding of how the Northeastern University Retiree Major Medical Plan works, and to ensure that you know how to handle service issues.

Throughout this document, references are made to "Medicare", your "personal supplemental medical plan(s)" and the "Northeastern University Retiree Major Medical Plan". The meaning of these terms is:

**"Medicare"** : Medicare is a federally sponsored health program generally available to a) people who are age 65 or older, b) some people with disabilities under age 65 and c) people with End Stage Renal Disease (permanent kidney failure requiring dialysis or a transplant). Medicare has two parts. Part A is Hospital Insurance. Most people do not have to pay for Part A since they or a spouse paid Medicare taxes while they were working. Part B of Medicare pays for doctors' services, outpatient hospital care and some other medical services. Medicare Part B requires premium payments.

**"Personal Supplemental Medical Plan(s)"** : This is coverage that you purchase directly from an insurance company (for example, Blue Cross Blue Shield) to cover expenses not provided for by Medicare. These plans are commonly referred to as "Medigap plans", "Medex", "Medicare Wrap plans" or "Medicare Supplemental plan".

**"Northeastern University Retiree Major Medical Plan"**: This is retiree medical coverage provided by Northeastern University and described by this SPD. This coverage is designed to provide an added layer of protection for services not covered under your other medical insurance programs.

If you cannot find the answer to your question(s) in this SPD, call the Member Services of EBPA toll-free number at 800-578-3272. A trained representative will be happy to help you.

**Tips for Plan Participants**

♦ Keep this booklet and your other health plan documents where you can easily refer to them.

♦ Ensure your physicians have accurate information regarding your health care coverage.

## Who is Eligible to Participate in the Plan

Eligibility under the Plan is limited to a "closed group" of retirees.  Eligibility is limited as follows :

### *Eligible Retirees*

Retirees who (a) retired from Northeastern University prior to December 31, 1991, (b) at the time of such retirement, satisfied all the applicable eligibility requirements of Northeastern University to be considered an eligible retiree of Northeastern University (including, but not limited to, the requirement of retiring after age 65 from Northeastern University with at least ten years of full-time active employment with Northeastern University), (c) are at least age 65, (d) satisfy any other requirements established by Northeastern University from time to time for participation in the plan and (e) have been approved by Northeastern University for participation in the Plan.

### *Eligible Spouses of Retirees*

Spouses of eligible retirees who are at least age 65 may also be covered under this plan as an eligible dependent.  Children are not eligible under the Plan.  A "spouse" is limited to a current lawful spouse of a covered retiree and does not include former spouses or common law spouses. To be covered under the Plan, an eligible spouse must satisfy all requirements established by Northeastern University from time to time for participation in the Plan and be approved by Northeastern University for participation in the Plan.  No person may be covered both as a retiree and as a spouse.

## Effective Date of Coverage

### *Eligible Retirees*

Your coverage took effect on the later of:

♦ The date of your retirement;

♦ The date you turned age 65;

♦ The date Northeastern University approved your coverage under the Plan.

***Eligible Dependent Spouses***

Coverage for your dependent spouse will become effective on the date your coverage becomes effective if, by then, you have requested dependent coverage for your spouse and Northeastern University approved that request.   You must report any change in a spouse's status to Northeastern University within 30 days of an event (divorce, death, etc.).  Upon your death, your surviving spouse is eligible to continue coverage under this Plan until he or she remarries or dies, whichever is the first to occur.

## Termination of Insurance

Your coverage will terminate upon the occurrence of the first of the following events :

♦ Termination of the Northeastern University Retiree Major Medical Plan;

♦ When you are no longer in the eligible class of retired employees described above:

♦ Your death:

♦ Spousal eligibility and coverage terminates upon the earlier of :

     o Divorce from a covered retiree; or

     o Remarriage of a surviving spouse after the covered retiree's death

COBRA Availability

If a spouse is actually covered under the Plan and his /her coverage terminates due to (a) divorce from the covered retiree or (b) remarriage after the covered retiree's death, the covered spouse may, in certain circumstances, be entitled to continue coverage under the Plan for a limited period of time under COBRA.  To apply for continued coverage under COBRA, the covered spouse must notify Northeastern University within 60 days after the date spousal coverage ceased under the Plan.    To continue coverage under COBRA, the former spouse will be required to pay the full cost of coverage in accordance with COBRA (102% of the applicable premium).   COBRA may not be available in all circumstances.  For more information about COBRA, please contact Northeastern University Human Resources.

---

## Contributions

---

Northeastern University reserves the right to require contributions to the cost of retiree medical coverage and / or to increase contributions. If in the future, you are required to contribute to the Plan, you will be notified of the cost in a separate communication.

---

## Schedule of Benefits

---

The benefits stated below are payable for Covered Charges incurred during a Calendar Year on account of bodily injury or sickness and are subject to other provisions and limitations of this policy. The conditions and limitations that apply to your benefits also apply to your dependent spouse.

A.   **Calendar Year** – The period from January 1 to December 31 of the same year.

B.   **Calendar Year Deductible** – The deductible represents the amount of Covered Charges that must be paid by a covered individual before benefits under this Plan commence. This amount shall be applicable in each Calendar Year to each Insured Individual. If any part or all of the deductible for a calendar year is applied against Covered Charges incurred during the last three (3) months of that calendar year, the deductible for the next ensuing calendar year shall be reduced by the amount so applied.

**The calendar year deductible amount under this Plan depends on whether or not you have purchased other insurance:**

| For Individuals who have: | The deductible amount under this Plan is: |
|---|---|
| Medicare Parts A & B and a "Personal Supplemental Medical Plan" | $200 |
| Medicare Parts A & B only | $750 |

C.   **Amount of Benefits Payable** – Once the Calendar Year deductible has been satisfied, the amount of benefits paid during a Calendar Year shall be equal to the Reimbursement Percentage below. **Note that the reimbursement percentage is applied only to Covered Charges that remain after all other available insurance plan submissions (Medicare Parts A&B and / or "Personal Supplemental Medical Plans").** Please refer to the Coordination of Benefits section for details.

| Type of service: | The reimbursement percentage under this Plan is: |
|---|---|
| for Covered Charges that are incurred for medical care and treatment of mental or nervous disorders, unless such charges are incurred for convulsive therapy or for treatment while the Insured Individual is confined to a hospital | 50% |
| for all other Covered Charges up to $5,000 | 80% |
| for all other Covered Charges in excess of $5,000 | 100% |

D.   **Maximum Lifetime Benefit Amount** – The total amount of coverage available under this Plan is limited to a lifetime maximum benefit of $100,000 per Covered Individual. The $100,000 maximum lifetime benefit amount will be reduced by the total amount of major medical benefits paid by TIAA-CREF to the insured individual prior to November 1, 1990.   In addition, there are certain Covered Services that have Calendar Year maximums.

| Type of service: | The maximum Calendar Year reimbursement under this Plan is: |
|---|---|
| for Covered Charges that are incurred for medical care and treatment of mental or nervous disorders, unless such charges are incurred for convulsive therapy or for treatment while the Insured Individual is confined to a hospital | 30 days |
| for Covered Charges that are incurred for Covered Charges by an alcoholic treatment facility | 30 days |

E.   **Covered Charges** – Covered Charges shall consist of the following charges incurred for necessary medical care and treatment provided they are prescribed or ordered by a Physician acting within the scope of his/her license; but in no event shall such charges include any amount in excess of the regular and customary ("R&C") charges for the service, supplies and treatment furnished :

1.   Charges by a hospital, operated pursuant to law and equipped with organized facilities for diagnosis, major surgery and twenty-four hour nursing service.  Note that amounts included for charges for private room and board, floor nursing and any other per diem charges shall not exceed the average semi-private room rate per day.

2.   Charges made for diagnosis, treatment and surgery by a Physician or by a legally qualified or licensed medical practitioner.

3.   Charges made by a registered nurse for private duty nursing.

4.   Charges by a radiologist, or physiotherapist, or laboratory, for diagnosis or treatment.

6

5.   Charges by a physician or professional anesthetist for the cost and administration of anesthetics.

6.   Charges for the following: local ambulance service; drugs or medicines requiring a written prescription; the use of radium and radio-active isotopes; the use of an artificial kidney machine; blood or blood plasma; artificial limbs or eyes; cast, splints, trusses, braces or crutches; oxygen and the rental of equipment for the administration thereof; rental of a wheel chair or hospital-type bed; rental of an iron lung or other mechanical equipment required for the treatment of respiratory paralysis.

7.   Charges made by an institution or organization certified to provide home health-care services where hospitalization or confinement in an Extended Care Facility would otherwise have been required.

8.   Charges by a freestanding ambulatory surgical facility licensed or approved for that purpose by the appropriate state agency.

9.   Charges by a mental hospital licensed by or under the direction and supervision of the appropriate state agency; not included under Item 1 of Section E, Covered Charges.   The amount included for charges for inpatient treatment shall not exceed those for the first 180 days of confinement in a calendar year nor shall the amount included for charges for private room and board and for floor nursing and other per diem charges incident thereto exceed the average semi-private room rate per day.

10.   Charges by a legally licensed alcoholic treatment facility; but the amount included for charges for inpatient treatment shall not exceed those for the first 30 days of confinement in such a facility during a calendar year.

11.   Charges made for outpatient treatment of mental or nervous disorders by an approved or licensed comprehensive health service organization or by a community mental health center, mental health clinic or day care center which furnishes mental health services, provided such center or clinic has been approved for that purpose by the appropriate state agency.  The maximum annual benefit for such charges is 30 days.

## Benefit Limitations

**The term "Covered Charges" shall not include the following expenses incurred for medical care or treatment:**

A.  Expenses incurred in any hospital owned or operated by the Government of the United States of America or Canada.  Similarly, physician and/or professional charges in his/her employment by any such Government.

B.  Expenses incurred on account of:

   1.  Dental treatment, except for treatment rendered within one year after an accident or injuries sustained in such accident to natural teeth including the replacement of such teeth and the settings of a fracture or dislocated jaw.

   2.  Eye refractions, eyeglasses or the fitting thereof.

   3.  Hearing aids or the fitting thereof.

   4.  Injury or sickness as a result of war, declared or undeclared.

   5.  Injury or sickness arising out of and in the course of employment to the extent benefits are payable under the applicable Workers' Compensation Law or similar statute.

C.  Expenses incurred by an Insured Individual to the extent such expenses qualify for reimbursement under Title 18 of the Social Security Act of the United States (Medicare), as amended, or to the extent such expenses would qualify for such reimbursement if the insured Individual had elected all the coverage and applied for all the benefits for such he or she was at any time eligible under such Act.

D.  Expenses incurred on account of injury or sickness to the extent benefits are payable under the terms of mandatory no-fault automobile insurance, except that this shall not exclude such expenses where prohibited by law.

E.  Charges in an Extended Care Facility are not covered.

## Coordination of Benefits (COB)

**Coordination of Benefits (COB)** – COB applies to this Plan if the covered individual has health coverage under more than one medical plan.  This Plan functions as a third level of coverage for certain medical charges as described herein after initial charges under Medicare and a supplementary insurance or "Medigap" plan have been covered.

This Plan may be reduced so that the total benefits paid under all plans combined does not exceed 100% of the Allowable Expenses.

8

| Provision of Protected Health Information to Plan Sponsor |
| --- |

**Disclosure of Information**.

(a)　　Northeastern University may only use and/or disclose Protected Health Information (as such term is defined in 45 C.F.R. §164.501) as permitted under the Standards for Privacy of Individually Identifiable Health Information under the Health Insurance Portability and Accountability act of 1996 ("Rule").

(b)　　The Plan will disclose Protected Health Information to Northeastern University only upon its receipt of a certification by Northeastern University that the Plan has been amended to incorporate the following provisions and that Northeastern University agrees to:

　　　(i)　　Not use or further disclose the information other than as permitted or required by the plan documents or as required by law;

　　　(ii)　　Ensure that any agents, including a subcontractor, to whom it provides Protected Health Information received from the Plan agree to the same restrictions and conditions that apply to Northeastern University with respect to such information;

　　　(iii)　　Not use or disclose the Protected Health Information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan of Northeastern University;

　　　(iv)　　Report to the Plan any use or disclosure of the Protected Health Information that is inconsistent with the uses or disclosures permitted by the Rule of which it becomes aware;

　　　(v)　　Make available Protected Health Information in accordance with 45 C.F.R. §164.524;

　　　(vi)　　Make available Protected Health Information for amendment and incorporate any amendments to Protected Health Information in accordance with 45 C.F.R. §164.526;

　　　(vii)　　Make available the information required to provide an accounting of disclosures in accordance with 45 C.F.R. §164.528;

　　　(viii)　　Make its internal practices, books, and records relating to the use and disclosure of Protected Health Information received from the Plan available to the Secretary for purposes of determining compliance by the Plan with the Rule;

　　　(ix)　　If feasible, return or destroy all Protected Health Information received from the Plan that Northeastern University still maintains in any form and retains no copies of such information when no longer needed for the purpose for which

9

disclosure was made, except that, if such return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible; and

(x)     Ensure that separation of the Plan and Northeastern University as indicated below.

**Separation of Plan and Plan Sponsor.**

(a)     Only the following types of employees under the control of the Plan Sponsor will be given access to the Protected Health Information:  Employees in Human Resources Management ("Permitted Employees").  Provided, however, that any employee or person not described above who receives Protected Health Information relating to payments under, health care operations of, or other matters pertaining to the Plan in the ordinary course of business, will also be included in the definition above of Permitted Employees.

(b)     The Permitted Employees may only use the Protected Health Information for Plan administrative functions that the Plan Sponsor performs for the Plan.

---

## How To Submit A Claim

**Notice of Claim.**  Claim forms are available in the Human Resources Management office, Northeastern University, 716 Columbus Avenue, Suite 250, Boston, MA  02120.  Phone #617-373-2230.

**Proof of Claim.**  All claim forms must be accompanied by the itemized bill or statement of services and the corresponding Explanation of Benefits paid by Medicare and/or the Insured Individual's supplemental Medigap carrier.

**Payment of Benefits.**   In general, claims payments will be paid directly to the providers. However, if the claim submission indicates that you have already paid the provider, the benefits payable under the group policy will be payable to you.  Note that reimbursement for prescription drugs will be made payable to you.

**Assignment.**  Your insurance is a non-assignable.

**Time Limit for Filing Claims.**  Claims must be filed within one (1) year of the date of service in order to be reimbursable under the Plan.

## Claims Procedures

The following claims procedures conform to requirements of ERISA for filing claims under the Plan in the event that you wish to make a claim for benefits.

**Benefit Determinations**

*Post-Service Claims*

Post-Service Claims are those claims that are filed for payment of benefits after health care has been received. If your post-Service Claim is denied, you will receive a written notice from the Plan Administrator within 30 days of receipt of the claim, as long as all needed information was provided with the claim. The Plan Administrator will notify you within this 30 day period if additional information is needed to process the claim, and may request a one time extension not longer than 15 days and pend your claim until all information is received.

Once notified of the extension, you then have 45 days to provide this information. If all of the needed information is received within the 45-day time frame and the claim is denied, the Plan Administrator will notify you of the denial within 15 days after the information is received. If you don't provide the needed information within the 45-day period, your claim will be denied.

A denial notice will explain the reason for denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures.

*Pre-Service Claims*

Pre-Service Claims are those claims that require notification or approval prior to receiving health care. If your claim was a Pre-Service Claim, and was submitted properly with all needed information, you will receive written notice of the claim decision from the Plan Administrator within 15 days of receipt of the claim. If you filed a Pre-Service Claim improperly, the Plan Administrator will notify you of the improper filing and how to correct it within 5 days after the pre-service claim, the Plan Administrator will notify you of the information needed within 15 days after the claim was received, and may request a one-time extension not longer than 15 days and pend your claim until all information is received. Once notified of the extension you then have 45 days to provide this information. If all of the needed information is received within the 45-day time frame, the Plan Administrator will notify you of the determination within 15 days after the information is received. If you don't provide the needed information within the 45 days period, your claim will be denied. A denial notice will explain the reason for denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures.

**Urgent Claims that Require Immediate Action**

Urgent Care Claims are those claims that require notification or approval prior to receiving medical care, where a delay in treatment could seriously jeopardize your life or health or the ability to regain maximum function or; in the opinion of a doctor with knowledge of your health condition could cause severe pain. In these situations:

♦ You will receive notice of the benefit determination in writing or electronically within 72-hours after the Plan Administrator receives all necessary information, taking into account the seriousness of your condition.

♦ Notice of denial may be oral with a written or electronic confirmation to follow within 3 days.

If you filed an Urgent Care Claim improperly, the Plan Administrator will notify you of the improper filing and how to correct it within 24 hours after the Urgent Care Claim was received. If additional information is needed to process the claim, the Plan Administrator will notify you of the information needed within 24 hours after the claim was received. You then have 48 hours to provide the requested information.

You will be notified of a determination no later than 48 hours after:

♦ The Plan Administrator's receipt of the requested information; or

♦ The end of the 48 hours period within which you were to provide the additional information, if the information is not received within that time.

A denial notice will explain the reason for denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures.

*Concurrent Care Claims*

If an on-going course of treatment was previously approved for a specific period of time or number of treatments, and your request to extend the treatment is an Urgent Care Claim as defined above, your request will be decided within 24 hours, provided your request is made at least 24 hours prior to the end of the approved treatment. The Claims Administrator will make a determination on your request for the extended treatment within 24 hours from receipt of your request. If your request for extended treatment is not made at least 24 hours prior to the end of the approved treatment, the request will be treated as an urgent care claim and decided according to the timeframes described above.

If an ongoing course of treatment was previously approved for a specific period of time or number of treatments, and you request to extend treatment in a non-urgent circumstance, your request will be considered a new claim and decided according to post-service or pre-service timeframes, whichever applies.

**How to Appeal a Claim Decision**

If you disagree with a claim determination after following the above steps, you can contact the Plan Administrator in writing to formally request an appeal. If the appeal relates to a claim for payment, your request should include:

12

♦ The patient's name and the identification number from the ID card.

♦ The date(s) of health care service(s).

♦ The provider's name.

♦ The reason you believe the claim should be paid.

♦ Any documentation or other written information to support your request for claim payment.

Your first appeal request must be submitted to the Plan Administrator within 180 days after you receive the claim denial.

**Appeal Process**

A qualified individual who was not involved in the decision being appealed will be appointed to decide the appeal. If your appeal is related to clinical matters, the review will be done in consultation with a health care professional with appropriate expertise in the field who was not involved in the prior determination. The Plan Administrator may consult with, or seek the participation of, medical experts as part of the appeal resolution process. You consent to this referral and the sharing of pertinent health claim information. Upon request and free of charge you have the right to reasonable access to and copies of, all documents, records, and other information relevant to your claim for benefits.

**Appeals Determinations**

*Pre-Service and Post-Service Claim Appeals*

You will be provided with written or electronic notification of the decision on your appeal as follows:

For appeals of Pre-Service Claims (as defined above), the first level appeal will be conducted and you will be notified by the Plan Administrator of the decision within 15 days from receipt of a request for appeal of a denied claim. The second level appeal will be conducted and you will be notified by the Plan Administrator of the decision within 15 days from receipt of a request for review of the first level appeal decision.

For appeals of Post-Service Claims (as defined above), the first level appeal will be conducted and you will be notified by the Plan Administrator of the decision within 30 days from receipt of a request for appeal of a denied claim. The second level appeal will be conducted and you will be notified by the Plan Administrator of the decision within 30 days from receipt of a request for review of the first level appeal decision.

For procedures associated with Urgent Claims, see "Urgent Claim Appeals That Require Immediate Action" below.

If you are not satisfied with the first level appeal decision of the Plan Administrator, you have the right to request a second level appeal from the Plan Administrator. Your second level appeal request must be submitted to the Plan Administrator within 60 days from receipt of first level appeal decision.

### Urgent Claim Appeals That Require Immediate Action

Your appeal may require immediate action if a delay in treatment could significantly increase the risk to your health or the ability to regain maximum function or cause severe pain. In these urgent situations:

♦ The appeal does not need to be submitted in writing. You or your doctor should call the Plan Administrator as soon as possible. The Plan Administrator will provide you with a written or electronic determination within 72 hours following receipt of your request for review of the determination taking into account the seriousness of your condition.

The Plan Administrator has the exclusive right to interpret and administer the provisions of the Plan. The Plan Administrator's decisions are conclusive and binding.

**Legal Proceedings.** Notwithstanding the foregoing, and to the extent permitted by law, no action at law or in equity can be brought under any benefit after one year from the date of service.

| Coverage Certification |
|:---:|

Based on provisions of the Health Insurance Portability and Accountability Act, which became effective June 1, 1997, if your coverage ends under the Plan after this date you'll receive a certificate confirming your period of coverage under the Plan. This certificate will be provided:

♦ If your coverage is ended under the Plan;

♦ When your coverage under COBRA ends; or

♦ Upon request, within 24 months after coverage under the Plan ends.

14

| Definitions |
| --- |

**Covered Charges**: Charges related to those services included in Section E.

**Extended Care Facility**: This term shall mean a licensed institution primarily engaged in providing skilled nursing care or rehabilitation services and which provides twenty-four hour nursing service and has at least one registered nurse employed full-time.

**Insured Individual**: Refers to either you or a dependent spouse for whom insurance is in effect.

**"Medicare"**: Medicare is a federally sponsored health program generally available to a) people who are age 65 or older, b) some people with disabilities under age 65 and c) people with End Stage Renal Disease (permanent kidney failure requiring dialysis or a transplant). Medicare has two parts. Part A is Hospital Insurance. Most people do not have to pay for Part A since they or a spouse paid Medicare taxes while they were working. Part B of Medicare pays for doctors' services, outpatient hospital care and some other medical services. Medicare Part B requires premium payments.

**Medigap Supplemental Insurance**: Refers to a supplementary insurance plan held by the Insured Individual for the purpose of providing medical coverage in addition to the coverage provided by Medicare Parts A & B (for example: Medex, AARP, Senior Care, etc.)

**"Northeastern University Retiree Major Medical Plan"**: This is coverage provided by Northeastern University and described by this SPD. This coverage is designed to provide an added layer of protection for services not covered under your other medical insurance programs. Northeastern University hopes to continue the Plan indefinitely, but as with all group health plans, the Plan may be changed or discontinued at any time with respect to all or any claims of retirees. Northeastern University provides the retiree medical plan for your benefit; however, you do not have a vested right to benefits or to a minimum level of coverage.

**"Personal Supplemental Medical Plan(s)"**: This is coverage that you purchase directly from an insurance company (for example, Blue Cross Blue Shield) to cover expenses not provided for by Medicare. These plans are commonly referred to as "Medigap plans", "Medicare Wrap plans" or "Medicare Supplemental plans".

**Physician**: This term shall mean any of the following: a legally licensed Doctor of Medicine, Doctor of Osteopathy, chiropodist, chiropractor, podiatrist; or a legally licensed or certified psychologist.

**"Regular and Customary" ("R&C")**: Represents the amount of a billed charge that will be considered by the Plan Administrator for reimbursement under the Plan. If a provider bills for an amount in excess of the "R&C" limit, those amounts are not Covered Charges under the Plan and remain your responsibility. The "R&C" allowance is based on the 90th percentile of average provider charges for certain services in established geographic areas.

**Retiree Insurance** – Refers to insurance for yourself.

**Spousal Insurance** – refers to the insurance for your eligible dependent spouse. A new spouse may be added to the Plan if a copy of an official marriage certificate is forwarded to the Northeastern University Benefits Office.

## Your ERISA Rights and Other Important Information

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan Participants are entitled to—

    (a)    examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) and available at the Public Disclosure Room of the Pension and Welfare Benefits Administration.

    (b)    obtain copies of all Plan documents and other Plan information including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and update summary plan description upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies; and

    (c)    receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

### Continue Group Health Plan Coverage

Continue health care coverage if there is a loss of coverage under the plan as a result of a qualifying event to the extent COBRA applies. Your spouse will have to apply within 60 days of the qualifying event and pay the full cost of coverage for such coverage.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of an employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plans, have a duty to do so prudently and in the best interest of you and other Plan Participants. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

## Enforce Your Rights

If your claim for a benefit is denied or ignored, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain schedules.

Under ERISA there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the Plan and do not receive them within thirty (30) days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a medical child support order, you may file suit in Federal court.

If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the Court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

## Assistance with Your Questions

If you have any questions about this Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or need assistance in obtaining documents from the Plan Administrator, you should contact the nearest area office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

## General Information About the Plan

The following information is provided to you in accordance with the Employee Retirement Income Security Act of 1974 (ERISA). This Plan summary, together with the subscriber agreement and other Plan descriptions you receive directly from the third party administrator constitutes your Summary Plan Description required by ERISA.

Northeastern University is providing this information, to comply with the ERISA reporting rules and regulations.

**Name of Plan:** Northeastern University Retiree Major Medical Plan

**Employer/Plan Sponsor:** Northeastern University
Human Resources Management
716 Columbus Avenue, Suite 250
Boston, MA  02120

**Employer Identification Number:** 04-1679980

**Plan Number:** 505

**Plan Type:** Welfare Benefit Plan

**Plan Year:** The Plan Year is the 12-month period ending on December 31st.

**Plan Administrator:**
The Administration of the Plan shall be under the supervision of the Plan Administrator.  To the fullest extent permitted by law, the Plan Administrator shall have the discretion to determine all matters relating to eligibility coverage and benefits under the Plan, and the Plan Administrator shall have the discretion to determine all matters relating to the interpretation and operation of the Plan. Any determination by the Plan Administrator or any authorized delegate, (including but not limited to EBPA), shall be final and binding in the absence of clear and convincing evidence that the Plan Administrator or delegate acted arbitrarily and capriciously.

Northeastern University
Human Resources Management
716 Columbus Avenue, Suite 250
Boston, MA  02120

**Type of Administration:** The Plan is self insured by Northeastern University and is administered by EBPA

**Source of Contributions to the Plan:** Non-contributory

18

**Agent for Service of Legal Process:**
If for any reason you wish to seek legal action, you may serve legal process on the Plan Sponsor, the Plan Administrator or the Agent for legal process at this address.

Office of University Counsel
Northeastern University
716 Columbus Avenue, Suite 250
Boston, MA  02120

## Amendment or Termination of the Plan

Northeastern University reserves the right in its sole discretion to modify, revoke, suspend, terminate or change the Plan at any time and for any reason by a written instrument, signed by a duly authorized officer of Northeastern University.  If the Plan is modified, revoked, suspended or terminated, you and other retirees may not receive benefits as described in other sections of this Plan document.  You may be entitled to receive different benefits, or benefits under different conditions.  It is possible that you will lose all benefit coverage under this Plan.  This may happen at any time if the University decides to terminate the Plan, or your coverage under the Plan.  In no event are you or will you become entitled to any vested rights under this Plan.

## Plan Documents

This Summary Plan Description covers only the major features of the medical plan. The Plan description has been designed to provide a clear and understandable summary of the Plan. It does not include all details of all provisions and exclusions. Complete information about the Plan is provided in the Plan Document and/or the Agreement between EBPA and Northeastern.

## Governing Law

The terms of this Plan will be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts to the extent not preempted by ERISA.

EXHIBIT 2

# ELEANOR W. LAMBERT

# VISITING ANGELS OF CAPE COD

915 Route 28 – Suite 1
Harwich, MA 02645
(508) 432-9600

| Invoice # | Date | Period | Amount |
|---|---|---|---|
| 27851 | 10/25/2021 | 10/19/2021– 10/23/2021 | $ 2,626.10 |
| 27884 | 11/1/2021 | 10/24/2021– 10/30/2021 | $ 3,866.68 |
| 27916 | 11/8/2021 | 10/31/2021– 11/6/2021 | $ 3,866.68 |
| 27949 | 11/15/2021 | 11/7/2021– 11/13/2021 | $ 4,231.94 |
| 27982 | 11/22/2021 | 11/14/2021– 11/20/2021 | $ 2,237.32 |
| 28016 | 11/29/2021 | 11/21/2021 | $ 210.00 |
| 28080 | 12/13/2021 | 12/8/19/2021– 12/11/2021 | $ 2,566.32 |
| 28110 | 12/20/2021 | 12/12/2021– 12/18/2021 | $ 5,093.46 |
| 28140 | 12/27/2021 | 12/19/2021– 12/25/2021 | $ 5,205.13 |
| 28166 | 01/03/2022 | 12/26/2021– 01/01/2022 | $ 5,241.14 |
| 28221 | 01/17/2022 | 01/09/2022– 01/15/2022 | $ 4,743.14 |
| 28247 | 01/24/2022 | 01/16/2022– 01/22/2022 | $ 4,773.10 |
| 28274 | 01/31/2022 | 01/23/2022– 01/29/2022 | $ 4,991.61 |
| 28302 | 02/07/2022 | 01/30/2022– 02/05/2022 | $ 4,769.23 |
| 28331 | 02/14/2022 | 02/06/2022– 02/12/2022 | $ 5,102.69 |
| 28361 | 02/21/2022 | 02/13/2022– 02/19/2022 | $ 4,784.34 |
| 28390 | 02/28/2022 | 02/20/2022– 02/26/2022 | $ 5,100.08 |
| 28417 | 03/07/2022 | 02/27/2022– 03/05/2022 | $ 4,796.61 |

| 28445 | 03/14/2022 | 03/06/2022– 03/12/2022 | $ 5,512.99 |
| 28475 | 3/21/2022 | 03/13/2022– 03/19/2022 | $ 4,797.26 |
| 28502 | 03/28/2022 | 03/20/2022– 03/26/2022 | $ 4,792.90 |
| 28531 | 04/04/2022 | 03/27/2022– 04/02/2022 | $ 4,794.07 |
| 28558 | 04/11/2022 | 04/03/2022– 04/09/2022 | $ 5,001.22 |
| 28587 | 04/18/2022 | 04/10/2022– 04/16/2022 | $ 4,780.14 |
| 28618 | 04/25/2022 | 04/17/2022– 04/23/2022 | $ 5,101.06 |
| 28648 | 05/02/2022 | 04/24/2022– 04/30/2022 | $ 1,782.43 |

**Total Invoices from Visiting Angels of Cape Cod**          $110,767.64

EXHIBIT 3

# ELEANOR W. LAMBERT

# TRADITIONS HOME HEALTH SERVICES LLC

One New Boston Drive – Suite 7
Canton, MA 02021

## INVOICES

## April 26, 2022 – August 19, 2022

| Invoice # | Date | Period | Amount |
|---|---|---|---|
| 1816 | 05/01/2022 | 04/26/2022– 05/01/2022 | $ 2,934.00 |
| 1872 | 05/08/2022 | 05/02/2022– 05/08/2022 | $ 3,423.00 |
| 1925 | 05/15/2022 | 05/09/2022– 05/15/2022 | $ 3,423.00 |
| 1974 | 05/22/2022 | 05/16/2022– 05/22/2022 | $ 3,423.00 |
| 2027 | 05/29/2022 | 05/23/2022– 05/29/2022 | $ 3,423.00 |
| 2077 | 06/05/2022 | 05/30/2022– 06/05/2022 | $ 3,667.50 |
| 2135 | 06/12/2022 | 06/06/2022– 06/12/2022 | $ 3,423.00 |
| 2189 | 06/19/2022 | 06/13/2022– 06/19/2022 | $ 3,423.00 |
| 2244 | 06/26/2022 | 06/20/2022– 06/26/2022 | $ 3,423.00 |
| 2295 | 07/03/2022 | 06/27/2022– 07/03/2022 | $ 3,423.00 |
| 2342 | 07/10/2022 | 07/04/2022– 07/10/2022 | $ 3,667.50 |
| 2390 | 07/17/2022 | 07/11/2022– 07/17/2022 | $ 3,423.00 |
| 2435 | 07/24/2022 | 07/18/2022– 07/24/2022 | $ 3,423.00 |
| 2481 | 07/31/2022 | 07/25/2022– 07/31/2022 | $ 3,423.00 |
| 2528 | 08/07/2022 | 08/01/2022– 08/07/2022 | $ 3,912.00 |

| 2577 | 08/14/2022 | 08/08/2022– 08/14/2022 | $ 3,423.00 |
| 2626 | 08/21/2022 | 08/15/2022– 08/19/2022 | $ 2,445.00 |

**Total Invoices from Traditions Home Health Services**          $57,702.00

# Commonwealth of Massachusetts

BARNSTABLE, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.   2372CV00295

Albert J. Schulz, Personal Representative
of the Will of Eleanor W. Lambert
_____, PLAINTIFF(S),

v.

Northeastern
University
_____, DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO ___NORTHEASTERN UNIVERSITY___. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Barnstable Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, _Superior_ Court, by mail to _P.O. Box_ 425, or in person to 3195 Main Street, Barnstable, MA 02630, _AND_

   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _Schulz Law Offices, LLC, 1340 Main_ Street, Osterville, MA 02655-1542

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. ~~Judith Fabricant~~ Heidi E. Brieger, Chief Justice on August 7, _____ , 2023 . (SEAL)

Scott W. Nickerson
Clerk-Magistrate

*Scott W. Nickerson*

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___          Signature: _____

**N.B.    TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.